# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| MARK JONES and PAMELA JONES, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL CASE NO. _____ |
| HARLEY-DAVIDSON, INC. | § § | JURY DEMANDED |
| *Defendant.* | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

COME NOW Mark Jones and Pamela Jones (together, "Plaintiffs") to complain of Harley-Davidson, Inc. ("Harley-Davidson" or "Defendant") and respectfully show the Court and Jury as follows:

### I. PARTIES

1. Plaintiffs are individuals residing in Pittsburg, Camp County, Texas. Plaintiffs are husband and wife and have been married for over thirty years.

2. Defendant is a corporation that is incorporated under the laws of the State of Wisconsin. Defendant has its principal place of business in the State of Wisconsin at 3700 West Juneau Avenue, Milwaukee, Wisconsin 53208. Defendant may be served with process through its registered agent at CT Corporation System, 350 N. Saint Paul St., Ste. 2900, Dallas, TX 75201-4234. FED. R. CIV. PRO. 4(h)(1)(B). In the alternative, substituted service may be made on the Texas Secretary of State under Texas Civil Practices and Remedies Code §17.044. *See* FED. R. CIV. PRO. 4(h)(1)(A).

### II. JURISDICTION AND VENUE

3. The Court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(1) because

Plaintiffs and Defendant are citizens of different U.S. states, and the amount in controversy exceeds $75,000, excluding interest and costs. The Court has jurisdiction over Harley-Davidson because Harley-Davidson is a foreign corporation registered with the Texas Secretary of State and has direct contact with and regularly conducts business in the State of Texas through more than fifty Texas-based dealerships.

4. Venue is proper in the Eastern District of Texas because a substantial part of the events or omissions giving rise to Plaintiffs' claims alleged herein occurred in this judicial district. *Id.* at §1391.

### III. FACTS & BACKGROUND

5. On or about June 15, 2012, Plaintiffs purchased a new 2012 Harley-Davidson Electra Glide Classic motorcycle (the "Motorcycle") from the Harley-Davidson dealership in Paris, Texas. The Motorcycle is a touring style motorcycle with an engine displacement of 103 cubic inches and weighing more than 850 pounds. The Motorcycle came equipped with unlinked thirty-two millimeter, four-piston fixed front and rear brakes, which Harley-Davidson bills as "state of the art and top of the line."[1]

6. Shortly after purchasing the Motorcycle, Plaintiffs installed an after-market exhaust pipe to make the Motorcycle louder so that other drivers would be aware of the Motorcycle's presence on the road and, thus, drive more safely in its vicinity. This is the only after-market change Plaintiffs made to the Motorcycle.

7. On July 6, 2013, Plaintiffs were driving the Motorcycle in the northbound lane of Texas Highway 271 in Mount Pleasant, Texas. Plaintiff Mark Jones was operating the Motorcycle, and his wife, Plaintiff Pamela Jones, was riding as a passenger on the back. At

---

[1] http://www.harley-davidson.com/en_US/Content/Pages/2013-Motorcycles/electra-glide-classic.html#!keyFeatures (last visited June 16, 2014).

approximately 10:12 a.m., a southbound Chevrolet Avalanche (the "Avalanche") driven by Robert Viviano cut in front of Plaintiffs, forcing Plaintiff Mark Jones to attempt an emergency stop to avoid colliding with the Avalanche. In doing so, Mr. Jones engaged both the front and back brakes of the Motorcycle.

8. During the emergency stop, the Motorcycle's front and back wheels locked up and ceased rotating, causing the Motorcycle to skid, fishtail, and become unbalanced. At some point while the Motorcycle was skidding, it began to lean over. Suddenly, one or both of the wheels regained traction on the road surface, causing the Motorcycle to "high side," or pitch violently in the opposite direction of the initial lean. Both Plaintiffs were flung from the Motorcycle. Plaintiffs and the Motorcycle made impact with the pavement and slid some distance until coming to a stop in the northbound lanes of Texas Highway 271. These events occurring on July 6, 2013 are referred to herein as the "Wreck."

9. Plaintiffs sustained severe injuries as a result of the Wreck. Both Plaintiffs were rushed to Titus County Regional Hospital in Mount Pleasant, Texas. The healthcare providers there determined that the severity of Plaintiffs' injuries required them to be flown by helicopter to East Texas Medical Center in Tyler, Texas. Specifically, Plaintiff Mark Jones suffered, among other injuries, three skull fractures, several broken bones (including his left clavicle, right shoulder blade, and nine ribs), and a severe brain injury that required him to be placed in a medically-induced coma for multiple weeks while the brain swelling subsided. Additionally, Plaintiff Pamela Jones suffered, among other injuries, a skull fracture, a traumatic brain injury (known as a diffuse axonal injury or brain shear), a pulmonary contusion, a grade-three spleen injury, and a shattered left olecranon (elbow). Plaintiffs remained in various hospitals and rehabilitation centers for months following the Wreck, but their injuries persist to this day. For

example, Mr. Jones still suffers from pain and discomfort in his shoulders and clavicle and cannot lift his arms without severe pain. Mrs. Jones likely will never regain full range of motion in her left arm, making simple tasks like washing her hair, putting on makeup, or getting dressed daily challenges.

10. Had the Motorcycle been equipped with an anti-lock braking system ("ABS"), the likelihood of these serious injuries occurring would have been eliminated or substantially reduced. Indeed, the superior safety of ABS has been acknowledged and understood within the motorcycle manufacturing industry for some time. However, to this day, ABS does not come standard on most Harley-Davidson motorcycles, including the Electra Glide Classic model that Plaintiffs purchased. Rather, since 2008, Harley-Davidson has only offered ABS as an option on the Electra Glide Classic and other similar models. Harley-Davidson describes its optional ABS feature as follows:

> When it comes to Electra Glide Classic with optional ABS, "stopping power" has a double meaning. The components of our ABS are tastefully hidden within the wheel hub, so you'll still turn heads with a clean, streamlined design. **More importantly, though, you get certainty in the saddle knowing your bike's going to behave when you need it**.[2]

Clearly, Plaintiffs' Motorcycle did not behave when they needed it to. And, as indicated by the above quote, Harley-Davidson did not expect that it would. Sadly, not only did Harley-Davidson fail to install ABS as a standard feature on the Motorcycle, Harley-Davidson and its agents failed even to mention that ABS was an option available to Plaintiffs when they purchased the Motorcycle.

11. Harley-Davidson is aware that its optional ABS feature is safer than the non-ABS brakes that came standard on the Motorcycle. Indeed, in a video recorded at a motorcycle show

---

[2] http://www.harley-davidson.com/en_US/Content/Pages/2013-Motorcycles/electra-glide-classic.html#!keyFeatures (last visited June 16, 2014) (emphasis added).

in 2012, a Harley-Davidson representative stated that customers should purchase the optional ABS feature "if you're looking for added control in emergency braking situations."[3] In an online advertisement for optional ABS, Harley-Davidson states, "[ABS's] purpose is to help you maintain control of your bike when braking in a straight-line emergency situation."[4] The advertisement goes on to explain, "The fundamental purpose of ABS is to keep the wheels rolling, which in turn allows continued control of the motorcycle." *Id.* Harley-Davidson also notes that when one of the wheels on a non-ABS motorcycle locks up, "the back of the motorcycle may come out from under you" or "the front end can tuck under you and may cause the bike to go down." *Id.* Despite its knowledge of the superior safety of ABS, Harley Davidson failed to include ABS as standard equipment on the Motorcycle. Even then, Harley-Davidson failed to mention the ABS option to Plaintiffs, much less warn Plaintiffs of the dangers of driving a non-ABS motorcycle.

12. In a recent online article entitled "Myths Busted: Anti-Lock Braking Systems," the American Motorcycle Association states, "By keeping the wheels from locking up and skidding when you grab the brakes, ABS not only allows you to maintain some control, but it allows you to stop in a shorter distance."[5] As evidenced by the article's title, raising awareness about the safety advantages of ABS has become necessary due to a misperception among motorcycle riders about the effectiveness of ABS. According to the American Motorcycle Association, "while ABS is growing in popularity, many riders remain either unconvinced by the technology or unfamiliar with what it offers." *Id.* And, Harley-Davidson was aware of this misperception. In its online ABS video advertisement, Harley-Davidson states:

---

[3] http://www.youtube.com/watch?v=9GIIVwUfWHU (last visited June 16, 2014).
[4] http://www.youtube.com/watch?v=YQ6R8vNm7_M (last visited June 16, 2014).
[5] http://www.americanmotorcyclist.com/Features/RideReports/AntiLockBraking.aspx (last visited June 16, 2014).

> Some riders have suggested that ABS lengthens their stopping distance, that they can brake better without ABS. But testing by Harley-Davidson engineers shows that is rarely true. In fact, an average rider on an ABS-equipped bike will have shorter stopping distances than on a bike without ABS. Testing has also shown that riders of all skill levels achieve more consistent stopping distances on ABS-equipped bikes. **Conclusion: ABS-equipped motorcycles provide the best emergency braking performance overall.**

*See* note 4, *supra* (emphasis added). Still, Harley-Davidson and its agents failed to install ABS as standard equipment, inform Plaintiffs of the ABS option, or warn Plaintiffs of the dangers inherent in driving a non-ABS motorcycle.

13. Recently, there has been a push for the federal government to require motorcycle manufacturers to install ABS as a standard feature. On May 30, 2013 (just weeks before the Wreck), the Insurance Institute for Highway Safety ("IIHS") and the Highway Loss Data Institute ("HLDI") sent a letter to David Strickland, the Administrator of the National Highway Traffic Safety Administration ("NHTSA"), imploring NHTSA to require ABS as a standard feature on all new motorcycles sold in the United States.[6] The letter states, "Research by IIHS and HLDI indicate[s] that ABS reduces the motorcycle fatal crash rate by an estimated 31 percent and the collision insurance claim rate by an estimated 20 percent." *See* Exhibit A at 1. This data was established in a study by IIHS entitled "Effects of Antilock Braking Systems on Motorcycle Fatal Crash Rates: An Update" (the "IIHS Study"). This IIHS Study was attached to the letter sent to David Strickland. *See id.* at 5. In addition to the IIHS Study, the letter cites numerous other studies demonstrating the superior safety of ABS. *See id.* at 3-4. For example, two studies from 2009 estimated that ABS has the potential to prevent 38-50% of serious motorcycle crashes. *See id.* at 1 (citing M. Rizzi, *et al*., 2009; G. Roll, *et al*., 2009). The letter states in conclusion, "IIHS and HLDI urge NHTSA to begin [ABS] rulemaking as soon as

---

[6] http://www.iihs.org/iihs/news/desktopnews/iihs-hldi-petition-federal-government-to-require-abs-on-all-motorcycles (last visited June 16, 2014). The letter is attached hereto as Exhibit A.

possible to reduce the number of motorcycle crashes, both fatal and non-fatal, by requiring this proven technology." *Id.* at 3.

14. The push to require ABS in all U.S. motorcycles follows on the heels of a similar movement in Europe. In 2012, the European Commission, the executive body of the European Union, passed a regulation mandating ABS on all highway motorcycles exceeding a minimum engine-displacement size.[7] Some European motorcycle manufactures, such as BMW, have already begun installing ABS as standard equipment in their U.S. models as well.

15. Here, had the Motorcycle been equipped with ABS, Plaintiffs would have been able to stop the Motorcycle more safely and avoid or substantially reduce the likelihood of serious injury or other loss.

## IV. CAUSES OF ACTION

16. Based on the above-described events and conduct, Plaintiffs suffered severe damages and assert several causes of action against Harley-Davidson.

### A. Strict Products Liability

17. The preceding paragraphs are incorporated herein by reference.

18. The Motorcycle was designed, manufactured, constructed, marketed, and/or distributed by and through the agents or representatives of Harley-Davidson. The Motorcycle was distributed and sold new to Plaintiff Mark Jones by Harley-Davidson through its registered dealership at 2875 NE Loop 286, Paris, TX 75460 (the "Paris Dealership"), on or about June 15, 2012. Harley-Davidson regularly engages in the business of supplying or placing products like the Motorcycle in the stream of commerce for use by the consuming public, including Plaintiffs. Defendant's conduct was solely for commercial purposes.

---

[7] European Commission Regulation No. 523/2012; *Official Journal of the European Union*, Legislation 160:8-12 (June 21, 2012).

19. The Motorcycle and its braking system remained unchanged from the time it was originally manufactured, distributed, and sold by Harley-Davidson until it reached the Paris Dealership and from the time the Paris Dealership sold it to Plaintiff Mark Jones. Put simply, the Motorcycle was defective and in an unreasonably dangerous condition when it left Harley-Davidson's hands, and it remained defective and unreasonably dangerous at all times thereafter until it ultimately caused Plaintiffs' injuries and the attendant damages.

20. At the time the Motorcycle was placed into the stream of commerce, it was, or should have been, reasonably expected and foreseeable that the driver of the Motorcycle would be required to engage the Motorcycle's braking system in an emergency stopping situation. Further, it was, or should have been, reasonably expected and foreseeable that the Motorcycle's lack of ABS would cause the Motorcycle's wheels to lock up or cease rotating and, thus, cause the Motorcycle to skid, fishtail, and/or fall over during operation of the Motorcycle and its non-ABS, non-linked braking system.

21. With respect to the design of the Motorcycle, at the time it left the control of Harley-Davidson, there were safer alternative designs available—*i.e.*, ABS and linked braking systems. Specifically, the inclusion of ABS in reasonable probability would have prevented or significantly reduced the risk of loss caused to Plaintiffs. Further, such alternative designs were economically and technologically feasible at the time the Motorcycle left Harley-Davidson's control, as evidenced by the fact that Harley-Davidson offers ABS as an option on its motorcycles. To the extent ABS was not required by state or federal regulation at the time the Motorcycle was designed and manufactured, such regulations, if applicable, were inadequate to protect the public from unreasonable risks of injury or damage.

22. At the time the Motorcycle left the control of Harley-Davidson, it was defective and unreasonably dangerous within the meaning of §402A Restatement (Second) of Torts, in that it was not adequately designed, manufactured, assembled, tested, and/or marketed to minimize the risk of causing harm to the user or consumer's person and personal property. Specifically, the Motorcycle suffered from an unreasonably dangerous design and/or manufacturing defect that caused and resulted in the Wreck and Plaintiffs' injuries and the attendant damages.

23. The unreasonably dangerous and defective design and/or manufacture of the Motorcycle was a producing and proximate cause of Plaintiffs' damages sought herein.

**B.     Failure to Warn/Marketing Defect**

24. The preceding paragraphs are incorporated herein by reference.

25. At the time the Motorcycle left Harley-Davidson's control, and throughout the stream of commerce, it was defective and unreasonably dangerous in that Harley-Davidson failed to provide adequate warnings and instructions to customers and prospective customers that could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the Motorcycle's intended or reasonably foreseeable uses. Specifically, Harley-Davidson was negligent in failing to provide such warnings and instructions regarding the Motorcycle's non-ABS, non-linked braking system in light of the likelihood that purchasers, such as Plaintiffs, would be forced to use the braking system to stop the Motorcycle safely in an emergency situation. This is especially true given Harley-Davidson's actual or constructive knowledge of ABS and non-ABS braking systems. To the extent such warnings and/or instructions were not required by state or federal regulation at the time the Motorcycle was designed, manufactured, and marketed, such regulations, if applicable, were inadequate to protect the public from unreasonable risks of injury or damage.

26. Harley-Davidson's failure to warn and/or instruct made the Motorcycle unreasonably dangerously defective and was a producing and proximate cause of Plaintiffs' damages sought herein.

**C.  Negligence**

27. The preceding paragraphs are incorporated herein by reference.

28. Harley-Davidson designed, manufactured, assembled, distributed, marketed, and sold the Motorcycle.  As such, Harley-Davidson owed a specific duty to purchasers and users of the Motorcycle, including Plaintiffs, to use reasonable care and prudence in the design, manufacture, assembly, distribution, marketing, and sale of the Motorcycle.  However, Defendant was negligent in the design, manufacture, assembly, distribution, marketing, and/or sale of the Motorcycle, and thus breached its duty of reasonable care and prudence, in the following ways:

   a. Planning, designing, assembling, manufacturing, distributing and/or selling a Motorcycle that does not accomplish its intended purposes;

   b. Planning, designing, assembling, distributing, manufacturing and/or selling a Motorcycle that was not equipped with ABS;

   c. Planning, designing, assembling, distributing, manufacturing and/or selling a Motorcycle that was not equipped with a linked braking system (*i.e.*, a system in which both the front and rear brakes are engaged from a single input mechanism);

   d. Planning, designing, assembling, distributing, manufacturing and/or selling a Motorcycle that was unsafe;

   e. Planning, designing, assembling, distributing, manufacturing and/or selling a Motorcycle that was unfit for its foreseeable uses;

   f. Failing to exercise reasonable care in the planning, designing, assembling, manufacturing, distributing, and/or selling of the Motorcycle;

   g. Failing to conduct reasonable testing and inspection of the Motorcycle prior to placing it in the stream of commerce;

h. Negligently supervising the design, manufacture, assembly, distribution, and sales processes; and

i. Other acts of negligence.

29. These acts of negligence, individually and/or collectively, were a producing and proximate cause of the damages Plaintiffs now seek to recover.

## V.     DAMAGES

30. As a result of Harley-Davidson's actions and/or inactions described above, Plaintiffs assert claims for damages as follows:

**A.     Plaintiff Mark Jones's Individual Damages**

31. Harley-Davidson's actions and/or inactions and the resulting Wreck proximately caused severe injuries to Plaintiff Mark Jones for which he seeks to recover monetary damages in this action. Those damages include, without limitation, the following:

        a. Medical expenses sustained in the past and future;

        b. Pain, suffering, and mental anguish sustained in the past and future;

        c. Physical impairment sustained in the past and future;

        d. Loss of earning capacity sustained in the past and future; and

        e. Loss of enjoyment of life sustained in the past and future.

**B.     Plaintiff Pamela Jones's Individual Damages**

32. Harley-Davidson's actions and/or inactions and the resulting Wreck proximately caused severe injuries to Plaintiff Pamela Jones for which she seeks to recover monetary damages in this action. Those damages include, without limitation, the following:

        a. Medical expenses sustained in the past and future;

        b. Pain, suffering, and mental anguish sustained in the past and future;

c. Physical impairment sustained in the past and future;

d. Loss of earning capacity sustained in the past and future; and

e. Loss of enjoyment of life sustained in the past and future.

## VI. Exemplary Damages

33. Plaintiffs contend that, in addition to other conduct, Harley-Davidson created an extreme degree of risk in its design, manufacture, assembly, distribution, marketing, and/or sale of the Motorcycle. Further, Plaintiffs contend that, in addition to other conduct, Harley-Davidson was actually, subjectively aware of the extreme risk it created, yet proceeded with conscious indifference to the rights, safety, and welfare of others, including Plaintiffs. As such, Harley-Davidson committed gross negligence in its design, manufacture, assembly, distribution, marketing, and/or sale of the Motorcycle, and Plaintiffs' injuries and the attendant damages were caused by Harley-Davidson's gross negligence.

34. Accordingly, in addition to damages sought in the preceding paragraphs, Plaintiffs assert a claim for exemplary damages against Harley-Davidson under Chapter 41 of the Texas Civil Practice and Remedies Code.

## VII. DEMAND FOR JURY

32. Plaintiffs demand a jury trial and have tendered the appropriate fee.

## VIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that Harley-Davidson be cited to appear and answer and, on final trial, that the Court award Plaintiffs a judgment against Harley-Davidson as follows:

    a. Actual damages as set forth above for an amount within the jurisdictional limits of the court;

    b. Exemplary damages as set forth above to the full extent permitted by law;

c. Pre-judgment and post-judgment interest as provided by law;

d. Costs of suit; and

e. All other relief, in law and in equity, to which Plaintiffs may be entitled.

Respectfully submitted,

/s/ Nelson J. Roach
Nelson Roach, Texas State Bar # 16968300
njroach@nixlawfirm.com
Trey Duck, Texas State Bar # 24077234
treyduck@nixlawfirm.com
NIX, PATTERSON & ROACH, LLP
205 Linda Dr.
Daingerfield, TX 75638
Tel. (903) 645-7333
Fax (903) 645-4415

**ATTORNEYS FOR PLAINTIFFS**