IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MARK JONES & PAMELA JONES, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:14-cv-694-RWS-RSP |
| HARLEY-DAVIDSON, INC. HARLEY- | § | |
| DAVIDSON MOTOR COMPANY | § | |
| GROUP, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Before the Court are Defendants Harley-Davidson, Inc. and Harley-Davidson Motor Company Group, LLC's ("Harley-Davidson") Motion to Exclude Opinion Testimony of John Lenox. (Dkt. No. 58.) Plaintiffs Mark and Pamela Jones ("the Joneses") have hired Mr. Lenox as an accident reconstruction expert. Harley-Davidson challenges Mr. Lenox's testimony which states that the Joneses' motorcycle was "defective or unreasonably dangerous" because it was not equipped with an Anti-Lock Braking System ("ABS") and that helmets would not have prevented or reduced Plaintiffs' injuries. (*See* Dkt. No. 58 at 1.) Harley-Davidson's Motion (Dkt. No. 58) is **DENIED**.

Harley-Davidson presents four arguments in support of excluding Mr. Lenox's testimony. *First*, Harley-Davidson says that Mr. Lenox is not qualified to offer opinions regarding (1) motorcycle design and motorcycle ABS or (2) the potential performance of helmets in this crash. *Second*, Harley-Davidson contends Mr. Lenox's opinions are conclusory, unsubstantiated *ipse dixit* and lack the reliability required under Federal Rule of Evidence 702 as well as the requirements of *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993) and its progeny.

*Third*, Harley-Davidson argues that Plaintiffs are offering Mr. Lenox merely as a conduit for inadmissible hearsay to improperly bolster their case. *Fourth* and finally, Harley-Davidson states that Mr. Lenox's opinions regarding engineering ethics misconstrue and misstate the applicable legal standard, and the risk of undue prejudice outweighs any probative value his opinions may have. The Court rejects all four arguments, for the reasons set forth below.

## APPLICABLE LAW

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but in *Daubert*, the Supreme Court held the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993). "The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668). In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected

to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)).

## ANALYSIS

### A. Mr. Lenox Is Qualified Under Federal Rule of Evidence 702

For the reasons set forth below, the Court finds that Plaintiff has met its burden to show that Mr. Lenox is a qualified expert under Rule 702 and can opine on (1) motorcycle design and motorcycle ABS as well as (2) the potential performance of helmets in this crash.

#### 1. Mr. Lenox is Qualified to Opine On Motorcycle Design & ABS

Harley-Davidson asserts that Lenox has no specialized knowledge, skill, experience, training or education that would qualify him to offer opinions on the case, and the mere fact that Lenox is an engineer and doctor does not automatically qualify him to offer opinion testimony about motorcycle design. (Dkt. No. 58 at 7.) In support of this argument, Harley-Davidson argues that Lenox has no knowledge, training or experience in the design or operation of motorcycles or their components (including ABS), has never designed any product or motorcycle, has never been employed by a motorcycle company, has not attended any seminars nor published or presented anything related to motorcycles or motorcycle design, manufacturing, or handling, has never done any work in motorcycle testing nor taken any courses on motorcycle

operation, has never operated a motorcycle and has no personal experience with motorcycle braking. (Dkt. No. 58 at 8-9.) However, a "lack of personal experience…should not ordinarily disqualify an expert, so long as the expert is qualified based on some other factor provided by Rule 702" and "an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight." *See U.S. v. Liu,* 716 F.3d 159, 168-169 (5th Cir. 2013); *Dixon v. Int'l Harvester Co.,* 754 F.2d 573, 579-80 (5th Cir. 1985).

Mr. Lenox's "formal education includes receiving a B.S. in Mechanical Engineering (University of Pennsylvania, 1963), an M.D. (University of Pennsylvania, 1968), and a Ph.D. in Mechanical Engineering (Stanford University, 1976; emphasis in kinematics/dynamics, space mechanics, biomechanics)" and also work "(1) in the field of bioengineering/biomechanical engineering/engineering design for over 53 years, and as (2) a trauma medical research physician, involved with simulating human impacts and/or investigating impact-induced injuries for over 37 years, focused on determining (1) the kinematics experienced and (2) the specific mechanisms for the impact injuries sustained by accident victims" (Exhibit B, Dkt. No. 58-2 at 10-11.) Mr. Lenox has also taught mechanism design, product safety engineering design and engineering ethics at the University of Texas San Antonio, and has educated himself on scientific literature concerning motorcycle crash causation, ABS experiments, and observational statistical studies on the effect of ABS on accident rates. (Dkt. No. 79 at 5-6.) It is clear then that Mr. Lenox's background qualifies him under Rule 702 because he possesses "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Thus, Mr. Lenox is qualified to render opinions regarding motorcycle design and ABS under Rule 702.

### 2. Mr. Lenox is Qualified to Offer Opinions On The Inability of Helmets to Reduce Traumatic Brain Injury

Harley-Davidson further asserts that Lenox is not qualified to render opinions regarding the inability of helmets to reduce traumatic brain injury because he never worked for a motorcycle helmet manufacturer, has never done any testing of motorcycle helmets and does not know of any of the applicable standards for motorcycle helmets. (Dkt. No. 58 at 9.) However, as discussed previously, Mr. Lenox's lack of specialized, personal experience pertaining to motorcycles does not disqualify him. His credentials as both a medical doctor and a Ph.D. in mechanical engineering as well as his over 37 years of experience as a trauma physician investigating impact-induced injuries makes him a more than adequate expert under Rule 702. Defendants' concerns about the details of his qualifications and experience go only to weight and can be adequately explored on cross-examination.

### B. Mr. Lenox's Opinion Testimony Meets the Requirements of Rule 702 and *Daubert*

Harley-Davidson next argues that Mr. Lenox's opinions are not based upon good scientific grounds and are nothing more than guesswork, unsupported speculation and his subjective belief intended only to support Plaintiff's theories in this case. (Dkt. No. 58 at 9-10.)

First, Harley-Davidson contends that Mr. Lenox offers no reliable basis for his opinion that Harley-Davison should have made ABS standard on all its models by 2009. However, Mr. Lenox misstated dates during his deposition, and he corrected these misstatements in a Supplemental Expert Report supported by his analysis of the collision reconstruction report and scientific references. (Exhibit D, Dkt. No. 58-3; Dkt. No. 79 at 8.) Among the pieces of scientific literature Mr. Lenox reviewed is the seminal "Hurt Report" on motorcycle crash causation showing improper braking as one of the most frequent causes of motorcycle crashes. (Dkt. No. 79 at 6.)

Second, Harley-Davidson argues that Mr. Lenox's conclusion that "an increasing number of motorcycles sold by Harley-Davidson's competitors came standardly equipped with ABS brakes" is unsupported. (Dkt. No. 58 at 11.) Yet, Mr. Lenox based his opinion on a November 2009 presentation prepared by Steve Twining, Harley-Davidson's Technical Staff Engineer for Braking Systems. (Dkt. No. 79 at 9). Thus, he does have support for this opinion.

Third, Harley-Davidson states that Mr. Lenox's opinion regarding the "frequency and gravity of the potential harm" and that "under the accident avoidance conditions faced by Mr. Jones on [July 6, 2013], the average operator would probably not be able to safely control his motorcycle during emergency braking" are completely based upon unfounded speculation. (Dkt. No. 58 at 11.) This argument is contrary to evidence submitted by Plaintiffs that establishes the range of scientific literature Mr. Lenox examined before forming his opinion. (Exhibit C, Dkt. No. 58-3; Dkt. No. 79 at 9.)

Fourth, Harley-Davidson contends that Mr. Lenox's opinion that Plaintiffs would have still sustained injuries is based upon unreliable speculation and not good scientific grounds (and also based solely on studies written by others), because he did not perform any testing to measure the rotational forces to which Plaintiffs were subjected to in the crash. (Dkt. No. 58 at 12.) However, Mr. Lenox's experience and knowledge as a doctor investigating impact-induced injuries combined with his analysis of scientific studies, eyewitness testimony as well as accident reconstruction reports pertaining to the injuries of both Mr. and Mrs. Jones is sufficient to meet the requirements of Rule 702 because Mr. Lenox's opinion is based on "(b) …sufficient facts or data; (c)…is the product of reliable principles and methods; and (d) [Mr. Lenox] has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d) (Dkt. No. 79 at 10-11). Furthermore, Rule 702 does not require an expert to perform his own testing.

As to commentary on any non-legal duties or obligations Harley-Davidson may have to warn the general public about ABS (Dkt. No. 58 at 13.), the Court holds that Mr. Lenox has the necessary work experience, educational background and training (as well as teaching experience in product safety engineering) to provide valid opinion testimony under Rule 702 about what a reasonable engineer or product designer would do in Harley-Davidson's position.

**C.     Mr. Lenox's Opinions Do Not Qualify as Hearsay**

Harley-Davidson additionally contends that Plaintiffs are improperly using Lenox as a conduit to inject studies performed by others, given Mr. Lenox's lack of experience, skill or specialized knowledge with regard to motorcycles and the purported absence of reliable scientific testing or information to support his opinions. (Dkt. No. 58 at 14.) The Court does not find Harley-Davidson's argument persuasive on this issue because Mr. Lenox has based his opinions on a wide variety of scientific and technical literature including the seminal Hurt Report, the Bradford Hill criteria, testimony of Harley-Davidson's engineers, consumer survey data and various statistical observational studies. Under Rule 703, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." (Exhibit B, Dkt. No. 58-2 at 6; Dkt. No. 79 at 14.) These scientific studies are typical of the type of material – even if they may be inadmissible – that experts may base their opinions on under Rule 703 and for that reason, the Court finds that Mr. Lenox's opinions are not hearsay. *See First Nat'l Bank v. Lustig*, 96 F.3d 1554, 1576 (5th Cir. 1996) ("Experts may rely on hearsay evidence in forming their opinions.").

In addition, the fact that Mr. Lenox may rely on hearsay in forming his opinions does not necessarily imply that such hearsay is admissible as evidence at trial. However, assuming the studies Mr. Lenox relies on are inadmissible hearsay and without addressing any individual

7

studies that the Joneses or Mr. Lenox may potentially rely on, the Court notes that studies considered as inadmissible hearsay can sometimes be "read" into evidence under an exception to the evidentiary rules excluding hearsay. Specifically, Rule 803(18) provides the following exception:

> **Statements in Learned Treatises, Periodicals, or Pamphlets.** A statement contained in a treatise, periodical or pamphlet if:
>
> (A) The statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and
>
> (B) the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.
>
> If admitted, the statement may be read into evidence but not received as an exhibit.

Thus, the Court notes that, if Mr. Lenox sufficiently establishes that a study is a reliable authority by admission or opinion testimony, then Mr. Lenox can read statements from that study into evidence. *See Constantino v. Herzog*, 203 F.3d 164, 172 (2d Cir. 2000) (affirming lower court's finding that statements from video by the American College of Obstetricians and Gynecologists were reliable and could be read into evidence). At this time, the Court does not rule on the admissibility of any particular document, piece of literature or study relied on by Mr. Lenox, but the Court finds that his opinions are not rendered inadmissible merely because he has relied on hearsay in forming those opinions.

**D.     The Probative Value of Lenox's Opinion Is Not Outweighed by its Prejudicial Effect**

Finally, Harley-Davidson argues that Mr. Lenox's opinion that Harley-Davidson violated "safe engineering practices" and "established engineering ethics and product safety engineering

design practice" is based on a standard of care not recognized by Texas law.[1] This, they argue, may confuse the jury regarding the applicable legal standard and thus, the prejudice to Harley-Davidson outweighs any probative value that Mr. Lenox's opinion may have.

As to any non-legal standards of care a reasonable engineer or product designer may take into consideration when manufacturing a motorcycle, Mr. Lenox's background, scientific knowledge and technical training sufficiently qualify him under Rule 702 to comment on principles of mechanism design, product safety engineering design and engineering ethics, subjects which he has taught on the college-level as a professor. For these aspects of Mr. Lenox's opinion testimony, there is little risk that Harley-Davidson will be subject to undue prejudice. The probative value of Mr. Lenox's opinion and the ability of a factfinder to use his opinion also clearly comports with the requirements under Rule 702.

## CONCLUSION

For the reasons above, the Court finds that the Joneses have shown that Mr. Lenox's testimony is relevant and reliable. Thus, Harley-Davidson's Motion to Exclude (Dkt. No. 58) Mr. Lenox's testimony is **DENIED**.

**SIGNED this 21st day of September, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[1] Mr. Lenox bases his opinion upon a canon of the American Society of Mechanical Engineers which states "Engineers shall hold paramount the safety, health, and welfare of the public in performing their professional duties." (Dkt. No. 58 at 15; Exhibit B, Dkt. No. 58-2 at 8.)