IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MARK JONES & PAMELA JONES, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:14-cv-694-RWS-RSP |
| HARLEY-DAVIDSON, INC. HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC, | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Pending before the Court is Plaintiffs Mark Jones and Pamela Jones' ("the Joneses") Motion to Strike the Testimony of Defendants Harley-Davidson, Inc. and Harley-Davidson Motor Company Group, LLC's ("Harley-Davidson") Expert, Lars H. Reinhart. (Dkt. No. 63.)

Mr. Reinhart issued three opinions: (1) that helmet usage would have lowered the Joneses' Abbreviated Injury Scale, (2) that the Joneses did not suffer diffuse axonal injuries and (3) that helmet usage would have mitigated and largely eliminated the Joneses' injuries. (Dkt. No. 63 at 4.) The Joneses assert that those three opinions were based upon flawed testing, improper standards and rampant speculation and therefore lack reliability and relevance. (Dkt. No. 63 at 4.) Harley-Davidson counters by arguing that Mr. Reinhart's opinions are reliable and are also based upon sound scientific methodology and generally accepted principles. (Dkt. No. 72 at 1.) Harley-Davidson also contends that Mr. Reinhart is qualified based upon his knowledge, training, and experience to offer his opinions regarding the effect helmets would have had upon reducing the Joneses' head injuries. (Dkt. No. 72 at 5.)

In their Reply, the Joneses reiterate that the three opinions from Mr. Reinhart are unreliable and inadmissible. (Dkt. No. 87 at 1.) In their Sur-Reply, Harley-Davidson adds that the Joneses' challenges to Reinhart's testimony relate to the weight of the testimony rather than its admissibility and therefore, there is not a proper basis for striking any of Reinhart's opinions. (Dkt. No. 93 at 1.)

## APPLICABLE LAW

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but in *Daubert*, the Supreme Court held the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993). "The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668). In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected

to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)).

## ANALYSIS

### A. Mr. Reinhart's First Opinion on the Mitigating Effects of Helmet Usage

The Joneses state that in his first opinion, Mr. Reinhart declares that without a helmet, Mr. and Mrs. Jones had an 85% and 70% chance, respectively, of sustaining an Abbreviated Injury Scale ("AIS") of 3 or greater in the accident but that, with a helmet, the chance of AIS of 3 or greater was closer to 20% for each. (Dkt. No. 63 at 5.) To reach this conclusion, Mr. Reinhart relied on the testing and opinions of another one of Harley-Davidson's experts, David R. Thom ("Mr. Thom"), who the Joneses contend used flawed methodologies to calibrate and calculate AIS scores and head injury criterion ("HIC") values. (Dkt. No. 63 at 5-6.)

In response, Harley-Davidson points out that methodologies inherent in generally accepted literature about HIC were used to assess the Joneses' expected "helmeted" AIS scores in Mr. Thom's tests, and because the AIS is a verified scoring system introduced in 1969 by the Association for the Advancement of Automotive Medicine (AAAM) and "is accepted on a global basis" as well as "generally relied upon for assessing injury severity," Reinhart's opinions are based upon sound methodology and are thus admissible. (Dkt. No. 72 at 6-7.)

The Court finds that Mr. Reinhart's first opinion on the mitigating effects of helmet usage is admissible, primarily because the Court has previously ruled that Mr. Thom's opinion is admissible as well. (*See* Dkt. No. 125). The Court further finds that the Joneses' challenges to the reliability and relevance of Mr. Thom's testimony (which they contend is the flawed foundation which Mr. Reinhart relies on) is directed at the weight of the evidence, not its admissibility. *See Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 354 (5th Cir. 2007) (objections to the lack of a textual support, where an expert otherwise utilizes scientific methods to reach a conclusion, "go to the weight not the admissibility of the expert's testimony."). An expert may also rely upon the opinion of another expert, as long as the other expert opinion "upon which [the] expert bases an opinion or inference…[are] of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid 703.[1]

**B.     Mr. Reinhart's Second Opinion That The Joneses Did Not Suffer Axonal Injuries**

The Joneses next argue that the opinion espoused by Reinhart that neither Mr. nor Mrs. Jones suffered a diffuse axonal injury (DAI) is unreliable because first, Reinhart states that "DAI injuries score as an AIS 4 or 5" but both Joneses exhibited an AIS of 3 and second, Reinhart relies on the fact that neither Mr. nor Mrs. Jones exhibited a sufficient loss of consciousness. (Dkt. No. 63 at 7.) The Joneses also contend that Reinhart's conclusions are problematic because they are based on the "flawed testing" methodology of Mr. Thom. (Dkt. No. 63 at 7-8.) As a counter, Harley-Davidson asserts the Joneses fail to distinguish between the literature's definition of DAIs from a clinical injury standpoint, and the broadened definition of DAI used

---

[1] "The Advisory Committee Notes [for Federal Rule of Evidence 703] recognize that experts may rely upon the opinions of other experts: 'Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including ... reports and opinions from nurses, technicians and other doctors....' Advisory Committee's Notes on Fed. R. Evid. 703; *see also* 4 WEINSTEIN & BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 703.04[3] ('The number of sources on which experts in various fields of expertise might reasonably rely to obtain information for the formation of opinions and inferences is virtually infinite. A few of those that the courts have considered with regularity are the following[:] ... opinions of other experts[.]')" *Eaves v. United States*, No. 4:07CV-118-M, 2009 WL 3754176, at *9 (W.D. Ky. Nov. 5, 2009).

for research purposes. (Dkt. No. 72 at 7.) Because the Court previously ruled Mr. Thom's testimony is admissible, it accordingly finds that Mr. Reinhart's second opinion is also admissible.

C.     **Mr. Reinhart's Third Opinion**

The Joneses finally argue that Reinhart's third opinion that "both riders sustained AIS 3 (non-DAI) head injuries due to their unhelmeted condition during the subject event" and "[h]ad both riders been wearing helmets, their head injuries would have been substantially mitigated and, more likely than not, would have sustained either a mild [traumatic brain injury ('TBI')] or no head injury at all" is unreliable as well as irrelevant. (Dkt. No. 63 at 13.) Again, the Joneses contend the testimony of Mr. Reinhart is inadmissible because it is based on the allegedly flawed testing testimony of Mr. Thom. Again, because the Court previously found Mr. Thom's opinion admissible, this argument is unpersuasive. Harley-Davidson also adds that based upon his analysis of the accident reconstruction, review of the Joneses' medical records and other materials, Reinhart is able to conclude within a reasonable degree of medical and engineering certainty that had Mr. and Mrs. Jones been wearing helmets, they would have sustained, at most, a mild TBI in the crash. (Dkt. No. 72 at 10-11.)

## CONCLUSION

For the reasons above, the Court finds that Harley-Davidson has shown that Mr. Reinhart's opinion testimony is admissible under Rule 702 and *Daubert*. Thus, the Joneses' Motion to Strike (Dkt. No. 63) Mr. Reinhart's testimony is **DENIED**.

**SIGNED this 22nd day of September, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE