# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| MARK JONES & PAMELA JONES, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Case No. 2:14-cv-694-RWS-RSP |
| HARLEY-DAVIDSON, INC. HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC, | § § § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM ORDER**

Pending before the Court is Plaintiffs Mark Jones and Pamela Jones's ("the Joneses") Motion to Strike the Testimony of Defendants Harley-Davidson, Inc. and Harley-Davidson Motor Company Group, LLC's ("Harley-Davidson") Expert, Kevin C. Breen. (Dkt. No. 64.) Harley-Davidson has hired Mr. Breen to serve as its accident reconstruction expert. The Joneses assert Mr. Breen's testimony should be excluded because its "lack[s] support, [is] beyond his field of expertise, or both." (Dkt. No. 64 at 5.) The Court finds Mr. Breen's testimony will not be excluded.

## **APPLICABLE LAW**

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but in *Daubert*, the Supreme Court held the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993). "The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)).

# ANALYSIS

**A.     "High-side" and "forces exerted on the Joneses" opinions**

The Joneses assert Mr. Breen's testimony that Mark Jones's fall during the accident was "slow and non-violent" should be excluded. They further assert that Mr. Breen's testimony that the primary force on Mr. Jones's body during the accident was from a vertical fall and that Pamela Jones was not "ejected" during the accident should be excluded. (*See* Dkt. No. 64 at 6, 8.) The Joneses assert this testimony is inconsistent with the physics of the accident and with the testimony of eyewitness(es). (*See* Dkt. No. 64 at 6 ("Breen admits that if the lean angle were to change at a rate of 23 mph, the capsize would indeed have been violent."); *id.* at 8 ("Breen's opinions regarding the extent of the forces exerted on Mr. and Mrs. Jones . . . lack foundational support and are contrary to the physical and factual evidence and eyewitness testimony.").) The Joneses also say Mr. Breen has not described the factual basis for his testimony. (*See* Dkt. No. 64 at 7 ("Breen asserts for the first time in his deposition that he calculated the 'roll rate' to be approximately 90 degrees per second. Breen does nothing to explain how he calculated this number.").)

Harley-Davidson responds by asserting Mr. Breen's testimony is grounded in facts. For example, Harley-Davidson notes Mr. Breen said "the motorcycle sustained minor, primarily cosmetic damage." (Dkt. No. 71 at 7.) From that he concluded "[b]ased on the vehicle geometry and th[is] damage pattern . . . that the first point of contact with the roadway after the last tire marks was either the engine guard or the lower portion of the footrest" while the motorcycle was tilted at "approximately 45 degrees." (Dkt. No. 71 at 7.) According to Harley-Davidson, Mr. Breen found from the "physical evidence on the motorcycle and at the scene and the speeds" that the motorcycle further tilted from 45 to 90 degrees over the distance of ten to twenty feet and

over a duration of one second. (*See* Dkt. No. 71 at 7–8; Dkt. No. 71-2 at 4 ("The motorcycle then continues to rotate and is not fully rotated (90 degrees) until the motorcycle has traveled a linear distance of approximately 20-30 feet.").)

As an initial matter, the Court notes Mr. Breen's testimony goes to the heart of the factual dispute between the parties. The Joneses say that the accident happened when Mr. Jones applied the brakes to make an emergency stop. When Mr. Jones applied the brakes, the back tire of the motorcycle broke traction with the road and the motorcycle leaned slightly to the right. (Dkt. No. 64-2 at 2–3.) After the back tire broke traction, Mr. Jones released the brakes. That caused the back tire to regain traction. The back tire regaining traction caused the lean of the motorcycle to change from right to left. This change threw the Joneses "over the motorcycle and onto the pavement," causing their injuries. (Dkt. No. 64-2 at 3.)

Harley-Davidson says the accident happened less violently. Harley-Davidson asserts Mr. Jones applied the brakes to make a sudden stop. (Dkt. No. 64-3 at 11.) When Mr. Jones applied the brakes, the back tire broke traction. This caused the rear end of the motorcycle to drift to the left. (Dkt. No. 64-3 at 11.) Harley-Davidson says Mr. Jones lost control of the motorcycle when it began to drift. The motorcycle drifted further, tilted left, and collapsed on top of Mr. Jones. (*See* Dkt. No. 64-3 at 11 ("This would indicate that he was not ejected during the overturn."); Dkt. No. 71-2 at 4 ("There is no evidence that the vehicle was leaning in the opposite (low side) direction prior to the onset of the high side event.").) Harley-Davidson contends that its version of the accident is supported by the physical evidence on the motorcycle and at the scene of the accident.

The Court finds the Joneses' criticisms of Mr. Breen's testimony are based on factual disputes about how the accident occurred. For example, the Joneses assert Mr. Breen failed to

4

calculate the "angle of yaw" before the high-side event happened. (*See* Dkt. No. 64 at 7.) The "angle of yaw," as both parties should agree, mainly affects the velocity at which a rider would have been "ejected" from a motorcycle in an accident. (*See* Dkt. No. 64 at 7 (stating "angle of yaw" affects the "velocity" of the ejection).) Mr. Breen asserts Mr. Jones was not "ejected". Instead, Mr. Breen says Mr. Jones was with the motorcycle when it tilted and collapsed. (*See* Dkt. No. 64-3 at 11 ("This would indicate that he was not ejected during the overturn.").) Because Mr. Breen does not contend Mr. Jones was "ejected," it is not unreliable for Mr. Breen to not have accounted for a factor that is relevant mainly to the velocity at which Mr. Jones would have been "ejected" in an accident.

The Joneses' challenge to Mr. Breen's testimony regarding the forces that acted on their bodies during the accident arises from the same factual disputes over how the accident happened. For example, Mr. Breen testifies that "[t]he primary force on [Mr. Jones's] body would be the vertical fall as the motorcycle is overturning at a relatively slow rate" and not any "rotational or horizontal forces or speed." (Dkt. No. 64-3 at 11.) The Joneses say this testimony should be excluded because it is inconsistent with the "undisputed" fact that "Mr. Jones' body and head rotated with the motorcycle through the capsize sequence and, thus, experienced rotational force." (Dkt. No. 64 at 9.)

The Court, however, will not exclude this testimony. Mr. Breen's testimony appears consistent with his position that during the accident, the rotation of the motorcycle was slow but sufficient to cause Mr. Jones to "fall off" the motorcycle and hit his head on the pavement. Mr. Breen does not contend the Joneses were "thrown off" the motorcycle and subjected to powerful rotational forces. (*See* Dkt. No. 71-2 at 4 ("If the motorcycle were to have rolled at a rate of 360 degrees per second as alleged by Lovett, the impact force at the initial contact point would

generate more than 3.5 g's.").) Therefore, the Court finds that it is not unreliable for Mr. Breen to not account for rotational forces.

To the extent the other experts and eyewitnesses have contradicted Mr. Breen, the Court finds no authority which holds that Mr. Breen's testimony needs to be consistent with all other testimony in order to be sufficiently relevant and reliable. Any inconsistencies in Mr. Breen's testimony go to its weight rather than to its admissibility and can be addressed by the Joneses' counsel on cross-examination.

**B.     "Speed" opinion**

The Joneses contend Mr. Breen's testimony that the motorcycle was traveling in "the 50–60 mph range" should be excluded because it is not consistent with that of other experts, the investigating officer, and the eyewitnesses. (*See* Dkt. No. 64 at 10.) The Joneses also contend Mr. Breen's testimony should be excluded because it is not supported by the scientific literature. (*See* Dkt. No. 64 at 10–11.) Harley-Davidson responds by stating that Mr. Breen's testimony is supported by the scientific literature and by the testimony of other eyewitnesses. (Dkt. No. 71 at 11–12.)

The Court finds this testimony should not be excluded because Mr. Breen does not apply unreliable methods to reach his conclusion. The Joneses contend that before the accident, their motorcycle was travelling at about 45 mph. (*See* Dkt. No. 64-2 at 4.) Mr. Breen contends the Joneses were travelling at least ten to fifteen percent faster than that. Mr. Breen says the Joneses' 45 mph estimate is too low because the Joneses calculated that speed from the physical evidence at the site but did not account for the deceleration that occurred before the skid began. (*See* Dkt. No. 64-3 at 12 ("The result being that there was deceleration due to braking prior to the onset of

the first visible skid marks"); *id.* ("Various studies indicate that this pre-skid braking effect is typically in the 5-15% range.").)

The Court finds that it is not unreliable for Mr. Breen to say the motorcycle decelerated ten to fifteen percent before the skid began. The parties agree the literature teaches that deceleration can occur before a skid begins. (*See* Dkt. No. 64-4 at 5.) The Joneses' concern with Mr. Breen's testimony is that in applying this principle, Mr. Breen concluded that the motorcycle decelerated ten to fifteen percent instead of four percent. The Joneses say the literature teaches at most a four percent pre-skid deceleration.

The Court finds this disagreement is not a basis for excluding Mr. Breen's testimony. The disagreement stems from a reasonable difference between the experts on how a scientific principle should be applied. *See* Fed. R. Evid. 702 Advisory Committee's note to the 2000 amendment ("The amendment is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise."). One example of this reasonable difference is the Joneses' contention that in calculating the amount of pre-skid deceleration, the experts should have focused on the rear brake data. Instead, Mr. Breen focused on both the front and rear brake data. (*Compare* Dkt. No. 64-6 at 4 ("[T]he % error is only .5% to a maximum of 10% when looking for rear only braking at 45 and 60 MPH runs. These are the only runs it is proper to use since they are within the scope of the Jones collision."); *with* Dkt. No. 64-3 at 12 ("The first is the rear tire skidding in addition to whatever deceleration effects were being developed by the application of the front brake.").) The scientific literature does not contain overwhelming data that contradicts Mr. Breen's method. Thus, the Court will not exclude his testimony. Indeed, Mr. Breen's testimony is supported by eyewitnesses who say the Joneses were travelling at or above 50 mph. (Dkt. No. 71 at 12.)

To the extent the Joneses dispute the relevance of the literature because the researchers did not use the right model of motorcycle, the Court finds this distinction goes to the weight of the evidence and not its admissibility. The literature supports Mr. Breen's method of adding some amount of speed to the Joneses' speed estimate to account for pre-skid deceleration. The literature also supports this principle regardless of the type of motorcycle used by the researchers in their study.

## C. "ABS," "causation," and "training" opinions

Finally, the Joneses contend Mr. Breen's testimony should be excluded because he testifies that the lack of ABS was not the cause of the accident. The Joneses contend Mr. Breen cannot draw this conclusion without evidence showing that non-ABS and ABS motorcycles offer equally stable braking. (*See* Dkt. No. 64 at 12 ("Breen should have tested the stability offered by ABS in straight-line emergency braking situations compared to the stability of non-ABS motorcycles where the back wheel locks. Of course, the answer is that ABS provides a more stable braking").)

The Joneses further contend that Mr. Breen's testimony should be excluded because he has no support for the conclusion of Mr. Jones's riding or lack of motorcycle training causing the accident. The Joneses assert Mr. Breen admitted Mr. Jones was operating the motorcycle reasonably and that a lack of motorcycle training was not the cause of the accident. (*See* Dkt. No. 64 at 13 ("If anything, Breen's Report and deposition show that Mark Jones[] operated the Motorcycle reasonably under the emergency circumstances he faced."); *see also* Dkt. No. 71 at 15 ("While Breen was not able to opine that Jones' failure to take motorcycle training was the 'specific cause' of this crash, he explained that it factored into the way Jones operated the motorcycle on the date of the crash.").)

8

The Court finds Mr. Breen's testimony should not be excluded because it is supportable by the results of his investigation. During his investigation, Mr. Breen tested both non-ABS and ABS equipped motorcycles. He found that both motorcycles "were easily controlled and stopped in a distance to have avoided interaction" with the truck that caused Mr. Jones to brake. (Dkt. No. 64-3 at 15.) According to Mr. Breen, this shows Mr. Jones braked improperly because the test riders were able to stop non-ABS equipped motorcycles without breaking traction on the back tire. (*See* Dkt. No. 64-3 at 15 ("The non-ABS fitted vehicle was operated . . . such that the rear brake was on the verge of skidding and the front brake modulated in a normal manner.").) Mr. Breen possesses the qualifications and expertise to conclude from these tests that Mr. Jones, and not ABS, was the cause of the accident. He also possesses the qualifications to conclude that motorcycle training may have improved Mr. Jones's ability to apply the rear brake in the same manner to achieve the same result as the test riders.

## CONCLUSION

For the reasons above, the Court finds that Harley-Davidson has shown that Mr. Breen's testimony is relevant and reliable. The Joneses' Motion to Strike (Dkt. No. 64) Mr. Breen's testimony is **DENIED**.

**SIGNED this 22nd day of September, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE